UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-20469-LENARD

GRETER ALVAREZ MARTIN,

    Plaintiff,

v.

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

    Defendant.
_____ /

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Plaintiff Greter Alvarez Martin's ("Plaintiff") Motion for Summary Judgment with Supporting Memorandum of Law (ECF No. 14), and Defendant Kilolo Kijakazi's, Acting Commissioner of Social Security ("Acting Commissioner" or "Defendant"), Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 15). Plaintiff did not file a reply to Defendant's Motion and Opposition, and the time to do so has passed. The Motions were referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge, for a ruling on all pre-trial non-dispositive matters, and for a Report and Recommendation on any dispositive matters. (ECF No. 2). The undersigned has fully considered the Motions, the record, and is otherwise fully advised in the matter, and respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Motion for Summary Judgment be **GRANTED**.

## I.     PROCEDURAL BACKGROUND

This case involves applications for Social Security disability insurance benefits and supplemental security income under the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq*. On August 13, 2019, Plaintiff filed an application under Title II of the Act for Social Security disability insurance benefits and an application under Title XVI of the Act for supplemental security income,[1] claiming she was unable to work due to depression and bipolar disorder. (R. 103, 104, 133, 139, 248–251, 252–265).[2] Plaintiff claimed a disability onset date of December 16, 2017. (R. 248, 259).

Plaintiff's applications were initially denied on September 19, 2019. (R. 87–94, 95–102). Upon reconsideration, Plaintiff's applications were again denied, on January 23, 2020. (R. 105–117, 118–130). Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A hearing took place on April 21, 2021, before ALJ Rebecca Wolfe.

In the decision, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations.[3] (R. 28). However, the ALJ found Plaintiff unable to perform her past relevant work as a general ledger bookkeeper. (R. 31). Instead, the ALJ, through the testimony of the vocational expert ("VE"), Donna P. Mancini, found that Plaintiff's age, education, work experience, and RFC enable her to "mak[e] a successful adjustment to other work that exists in significant numbers in the national economy." (R. 33). Accordingly, on May 3, 2021, the ALJ issued her decision finding

---

[1] *See Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107, n.2 (2000)) (footnote omitted) ("The regulations that govern [Title II and Title XVI] are, for today's purposes, equivalent. Likewise, § 405(g) sets the terms of judicial review for each.").
[2] Citations to the Certified Administrative Record (ECF No. 13) are indicated by "R." followed by the Acting Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).
[3] Limitations or restrictions which affect a claimant's ability to meet the demands of jobs, other than strength demands, are considered non-exertional limitations. 20 C.F.R. § 416.969a(a). Examples of non-exertional limitations include difficulty functioning due to nervousness, anxiety, or depression or difficulty performing manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, crouching. *See id.* § 416.969a(c)(vi).

that Plaintiff was not under a disability from December 16, 2017 through the date of the decision, (R. 33); a "Notice of Decision – Unfavorable" issued that same day, (R. 17–22). Plaintiff sought review from the Appeals Council, (R. 239–247), which subsequently denied her request for review on January 13, 2022. (R. 2–6).

Thus, under 42 U.S.C. § 405(g), Plaintiff has exhausted all forms of administrative review. Accordingly, Plaintiff commenced this action on February 15, 2022, seeking review of the ALJ's decision as a final decision of the Acting Commissioner. (ECF No. 1). Plaintiff and Defendant both filed Motions for Summary Judgment, which are now ripe for review.

## II.    REGULATORY FRAMEWORK

Eligibility for Social Security benefits requires the claimant to prove she is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A). The Act defines a disability as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Code of Federal Regulations outlines a five-step sequential evaluation process for deciding whether a claimant is disabled. The burden for proving disability rests on the claimant. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaged in any substantial gainful activity, she will be found not disabled.

In the second step, the ALJ must then determine whether the claimant has a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will not be found disabled. 20 C.F.R. § 1520(c). If the claimant does have a severe impairment or combination of impairments, the ALJ goes on to step three. *Mabry v. Saul*, No. 19-cv-01023, 2020 WL 4428749, at *2 (N.D. Ala. July 31, 2020).

In the third step, the ALJ must determine whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P. App. 1.

Step four consists of a two-prong analysis, in which the ALJ assesses the following: (1) the claimant's residual functional capacity ("RFC") and (2) the claimant's ability to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. If the claimant can still perform her past relevant work, then she will not be found disabled. *Id.*

In step five, the burden shifts to the SSA to show the existence of other jobs in the national economy that the claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). If met, the "burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA]." *Id.* The ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant is capable of adjusting to other work. If the

claimant can make an adjustment to other work that exists in the national economy, then she is not disabled. If not, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). In determining whether the Acting Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

### III.  ADMINISTRATIVE FINDINGS

After reviewing the record and conducting a hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Following a hearing in which testimony was taken and evidence presented, the ALJ issued a written decision. As part of the analysis, the ALJ conducted the required five-step sequential evaluation.

In step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of onset of Plaintiff's claimed disability, on December 16, 2017. (R. 26). In step two, the ALJ found that Plaintiff had severe impairments of depression, anxiety, and insomnia. (R. 26).

In step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (R. 27). In so concluding, the ALJ found that Plaintiff has a "moderate limitation" in understanding, remembering, or applying information; a "moderate limitation" in interacting with others; a "moderate limitation" with regard to concentrating, persisting, or maintaining pace; and a "moderate limitation" with regard to adapting or managing oneself. (R. 27–28). The ALJ noted that "[n]o treating or examining medical source has recorded objective clinical or diagnostic

5

findings that are the same as or medically equivalent to the criteria of any listed impairment." (R. 27).

Prior to turning to step four, the ALJ evaluated Plaintiff's RFC and made the following finding:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can frequently reach bilaterally overhead; never have exposure to hazardous machinery, mechanical parts, or unprotected heights. The claimant is able to tolerate infrequent changes that are gradually introduced in a routine work setting. The claimant can understand and carry out simple and detailed, but uninvolved oral, written, and diagrammed instructions, but not at a production rate or pace. The claimant can occasionally interact with supervisors, coworkers, but never the public. The claimant can maintain concentration for at least two hours at a time and would remain on task ninety percent of the day.

(R. 28).

In reaching the RFC finding above, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. 28). The ALJ also considered "medical opinion(s) and prior administrative medical finding(s)[.]" (R. 28). The ALJ found that, while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 30).

The ALJ found that the prior administrative findings and opinion of Jill Rowan, Ph.D., the State agency psychological consultant on reconsideration, was more persuasive than the prior administrative findings and opinion of the State agency psychological consultant at the initial level. (R. 30–31). The ALJ also found that medical opinion of Plaintiff's treating psychiatrist, Juan Ortiz, M.D., was not persuasive. (R. 31).

6

In step four, the ALJ found that Plaintiff is unable to perform any past relevant work, when comparing Plaintiff's RFC with the physical and mental demands of her prior work as a general ledger bookkeeper. (R. 31). The ALJ then found that Plaintiff was a "younger individual" as of the alleged disability onset date, based on her age at that time. (R. 32). The ALJ also found that Plaintiff has at least a high school education. (R. 32). And the ALJ found that transferability of job skills "is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not the claimant has transferable job skills." (R. 32).

In step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 32). These jobs include: hospital cleaner; floor waxer; and "sweeper, cleaner industrial." (R. 32). All three jobs are unskilled; two of the jobs are reasoning level one jobs, and one of the jobs is a reasoning level two job. (R. 32–33). Finding that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that Plaintiff has not been under a disability, as defined in the Act, from December 16, 2017 to the date of the ALJ's decision. (R. 33).

IV. **STANDARD OF REVIEW**

District courts reviewing an ALJ's denial of a disability claim treat the denial as the Commissioner's final decision. *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1338 (11th Cir. 2021). District courts review an ALJ's denial for "whether substantial evidence supports the decision and whether the correct legal standards were applied." *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Substantial evidence constitutes relevant evidence that a reasonable person would find sufficiently supports the conclusion. *Mitchell v. Comm'r, Social Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winschel*, 631 F.3d at 1178). The reviewing court must scrutinize the entire record to determine if substantial evidence exists, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), and may not "reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). If substantial evidence supports the Commissioner's decision, the Court "must affirm, even if the proof preponderates against it." *Dyer*, 395 F.3d at 1210 (quoting *Phillips*, 357 F.3d at 1240 n.8). Reversal is mandated if the Commissioner incorrectly applied the law or insufficiently articulated its legal application, leaving the reviewing court unable to ensure proper legal application. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## V.    ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed under § 405(g) and remanded for an award of benefits based on a finding that she is under a disability. Alternatively, Plaintiff requests that this case be remanded to the Acting Commissioner with instructions to reassess the medical opinion evidence of record and to issue a new RFC finding.

In this appeal from an administrative decision of the Acting Commissioner of Social Security, Plaintiff, at bottom, challenges the ALJ's RFC finding as not supported by substantial evidence, on the ground that the ALJ failed to properly assess the medical opinion of her treating psychiatrist, Juan Ortiz, M.D.[4] Specifically, Plaintiff contends that the ALJ failed to properly assess the supportability and consistency of the medical opinion of Dr. Ortiz, and thus the ALJ

---

[4] *See* (ECF No. 14 at 17) ("Notably, the question at hand is not whether the ALJ properly discussed other evidence in the record. The question is whether the ALJ properly discussed Dr. Oritz's opinion.").

8

improperly discounted his opinion when the ALJ found it not persuasive. In arguing that the ALJ improperly discounted Dr. Ortiz's medical opinion, Plaintiff asserts that the ALJ improperly, and implicitly, afforded more weight to the opinion of Jill Rowan, Ph.D., a state agency non-examining psychologist, than the ALJ afforded to Dr. Ortiz's medical opinion, despite failing to assess the weight Dr. Rowan's opinion deserves consistent with the regulations. Plaintiff contends that the benign clinical findings in a clinical setting described in the administrative record that the ALJ relies upon do not negate clinically significant findings that would tend to support Plaintiff's claim of disability.

Defendant responds that the ALJ properly assessed medical opinion evidence in the record. According to Defendant, Plaintiff's arguments amount to a request for the Court to reweigh the evidence in the administrative record. Defendant argues that the ALJ properly assessed the supportability and consistency of the opinion of Plaintiff's treating physician, Dr. Ortiz, in light of the evidence in the administrative record. While Defendant appears to concede that the ALJ failed to properly assess the opinion of Dr. Rowan, Defendant asserts the error is harmless.[5]

The Court first reviews the regulations governing the consideration of medical evidence in social security disability applications.

### A. The RFC and Considering Medical Evidence

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [the claimant's] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). Along with age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work. *Id.* (citing 20 C.F.R. § 404.1520(f)). "[T]he task of

---

[5] *See* (ECF No. 15 at 13) ("While the ALJ may not have properly discussed the regulatory factors with respect to Dr. Rowan's findings, Plaintiff has not sufficiently shown error stemming from any error.").

9

determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors" and "[t]he ALJ makes this determination by considering the claimant's ability to meet the physical, mental, sensory, and other requirements of work." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (citing 20 C.F.R. § 416.945(a)(4)).

The claimant's RFC takes into account "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). In 2017, the Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

The revised regulations provide that the Social Security Administration will consider medical opinions or prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of the program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). As such, the ALJ must explain how she considered these two factors when determining the persuasiveness of a medical source's medical opinion. *Id.* The ALJ may, but is not required to, also explain how she considered the remaining factors. *Id.*

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

10

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520(c)(2), 416.920c(c)(2).

"Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record." *Mercado v. Comm'r of Soc. Sec.*, No. 22-CV-287, 2023 WL 145154, at *4 (M.D. Fla. Jan. 10, 2023) (quoting *Tocco v. Comm'r of Soc. Sec.*, No. 21-cv-399, 2022 WL 3362863, (M.D. Fla. July 28, 2022)).

### B. The ALJ Properly Considered the Medical Opinions and Substantial Evidence Exists to Support Her RFC Findings

Plaintiff argues that the ALJ failed to properly assess the opinion of Plaintiff's treating psychiatrist, Juan Ortiz, M.D. (R. 546–547). Plaintiff asserts that the ALJ disregarded evidence in the administrative record and failed to objectively and reasonably consider the totality of the evidence that supported Dr. Ortiz's opinion; Plaintiff's Motion recounts the evidence in the administrative record that Plaintiff claims the ALJ did not acknowledge in her decision. (ECF No. 14 at 8–14). Plaintiff argues that the ALJ instead relied on a "multitude of benign clinical findings to discredit Dr. Ortiz," and thus presented "only a one-sided, thoroughly inadequate characterization of Dr. Ortiz's clinical findings." (ECF No. 14 at 8). Moreover, Plaintiff contends that the ALJ's decision fails to analyze the consistency factor with respect to Dr. Ortiz's medical opinion. In sum, Plaintiff contends that the ALJ failed to properly analyze the supportability and consistency of Dr. Ortiz's opinion, and thus at bottom, the ALJ erred in finding that Dr. Ortiz's opinion was not persuasive.

Defendant responds that the ALJ properly considered and discussed the evidence in the administrative record in assessing Dr. Ortiz's medical opinion. According to Defendant, the ALJ was not required to use the words "supportability" and "consistency," or separately discuss the

11

two factors, in her decision when assessing Dr. Ortiz's opinion. Rather, Defendant argues that the ALJ did consider the supportability and consistency of Dr. Ortiz's opinion, discussing his opinion in relation to his own treatment notes at Citrus Health Network, Inc., ("Citrus Health"), and in relation to treatment notes from other mental health providers. Defendant argues that Plaintiff would have the Court re-weigh the evidence in the administrative record, in contravention of the limited scope of the Court's review. However, Defendant asserts that the ALJ acknowledged conflicting evidence in the record, resolved those conflicts, and assessed Dr. Ortiz's opinion in light of those conflicts.

Dr. Ortiz opined that Plaintiff had a fair ability to follow work rules, maintain personal appearance, and demonstrate reliability. (R. 546–547). He opined that Plaintiff had a poor ability to relate to co-workers; deal with the public; use judgment; interact with supervisors; function independently; maintain attention or concentration; understand, remember, and carry out detailed but not complex job instructions, or simple job instructions; behave in an emotionally stable manner, and relate predictably in social situations. (R. 546–547). And Dr. Ortiz opined that Plaintiff had no ability to deal with work stress or understand, remember, or carry out complex job instructions. (R. 546–547). Dr. Ortiz wrote that his opinion was supported by Plaintiff's severe anxiety and mood fluctuations, difficulty concentrating, poor memory, and inability to retain and learn new information. (R. 546–547). He further noted that Plaintiff's poor concentration leads to poor memory and the inability to retain or learn new information. (R. 547).

In assessing this opinion, the ALJ wrote in full as follows:

> Juan Ortiz, M.D., the claimant's treating psychiatrist, opined that the claimant had mostly poor abilities in making occupational adjustments; poor to no ability in making performance adjustments; and fair to poor ability in making personal/social adjustments (Ex. B7F). Notably, Dr. Ortiz found that she had no ability to do deal with work stress or to understand, remember, and carry out complex job instructions. This opinion is not persuasive because it is not well supported by the

>record and acceptable clinical findings throughout the record. Dr. Ortiz writes that the claimant has severe anxiety; deficits in concentration; and poor memory (Ex. B7F/2-3). However, the records from Citrus Health and his own treatment notes detail that the claimant had improvements in her symptoms, she was goal oriented; and her memory was intact (Ex. B5F; B6F). While the claimant did endorse difficulty with concentration, session notes detail that she remained attentive and cooperative throughout her hour long therapy session (Ex. B6F/5). The claimant is noted to consistently be fully oriented in all spheres and have logical thought process. Her attention and concentration have also been intact on mental status examination (Ex. B4F/17, 19). Thus, the objective evidence does not support the severity of limitations in Dr. Ortiz's opinion.

(R. 31).

The ALJ properly assessed Dr. Ortiz's medical opinion under the governing regulations. In finding unpersuasive Dr. Ortiz's opinion on the severity of Plaintiff's limitations, the ALJ expressly considered Dr. Ortiz's opinion within the context of his own treatment notes from Citrus Health. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (quoting *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984)) (explaining that "treating-physician opinions 'should not be considered in a vacuum, and instead, the doctors' earlier reports should be considered as the bases for their statements'"). The ALJ summarized the treatment notes from Dr. Ortiz and other mental health providers as detailing Plaintiff's severe anxiety, deficits in concentration, and poor memory, but also as detailing Plaintiff's improvement in her symptoms, that Plaintiff was goal oriented, and that her memory was intact. The ALJ thus concluded that Dr. Ortiz's treatment notes did not support his medical opinion.

That Plaintiff can point to contradicting evidence in the record does not compel a finding that the ALJ failed to properly assess the supportability factor with respect to Dr. Ortiz's opinion. Indeed, sixteen of the treatment notes to which Plaintiff cites to in support were not written by Dr. Ortiz, but instead by Massiel Snow, Psy.D, or Dolly Akel-Greer, Psy.D, who conducted Plaintiff's

13

therapy sessions at Citrus Health (ECF No. 14 at 8–14) (citing (R. 488, 489, 510, 512, 513, 517, 519, 520, 521, 530, 531, 532, 534, 537, 538, 542)).

In any event, a review of Dr. Ortiz's treatment notes reveals that, while Plaintiff presented with visual and auditory hallucinations, disorientation, insomnia, and depression, Plaintiff's symptoms had generally improved by the time Dr. Ortiz authored his opinion in February 2021, as the ALJ expressly noted in her decision. *See* (R. 498) (November 1, 2019 – first visit with Dr. Ortiz); (R. 496) (December 5, 2019 – reduced auditory hallucinations noted, but reports insomnia, visual hallucinations, panic attacks, and issues concentrating); (R. 514) (January 9, 2020 – reporting that medications are helping and sleep was improving, but reporting issues with concentration); (R. 511) (March 6, 2020 – identifying issues with concentration, panic attacks, fearfulness, auditory hallucinations and inability to drive as why Plaintiff cannot work, and also reporting that Plaintiff "still has not been able to obtain her Disability"); (R. 518) (May 1, 2020 – reporting reduced auditory hallucinations, reduced depression with medications, firm voice, goal oriented, and sleep is adequate); (R. 525) (June 23, 2020 – reporting slight but manageable anxiety due to the COVID-19 pandemic, that Plaintiff's symptoms have improved with medication, Plaintiff does not consider herself to be depressed, no psychotic symptoms active, and adequate sleep); (R. 533) (August 13, 2020 – increasing medication due to auditory hallucinations, but noting moderate depression and difficulties with sleeping); (R. 535) (September 10, 2020 – discussing difficulties with Plaintiff's insurance regarding coverage for medication for sleep, but noting reduced auditory hallucinations); (R. 544) (December 9, 2020 – reporting reduced auditory hallucinations and improved sleep with medications, reduction in severe depression, and that Plaintiff's overall condition had shown definitive improvement).

Thus, the ALJ's assessment of the supportability of Dr. Ortiz's medical opinion was sufficient.

That the ALJ did not conduct a separate analysis of the consistency factor was not error. *See Alvarez v. Comm'r of Soc. Sec.*, No. 20-CV-24711, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) (noting that there is no "legal authority indicating that the ALJ cannot address the supportability and consistency of the evidence simultaneously"). In this regard, the ALJ properly assessed the consistency of Dr. Ortiz's opinion. The ALJ noted that "[w]hile the claimant did endorse difficulty with concentration, session notes detail that she remained attentive and cooperative throughout her hour long therapy session (Ex. B6F/5)." (R. 31). In making this observation, the ALJ cited in her decision to the exhibits in the administrative record containing these progress notes relating to Plaintiff's therapy sessions, which were written by Dr. Snow and Dr. Akel-Greer at Citrus Health. *See* (R. 31) (citing "Ex. B5F" (R. 510–516); "Ex. B6F" (R. 517–544)); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) ("We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole.").

Dr. Snow's and Dr. Akel-Greer's progress notes from Plaintiff's therapy sessions do record, as the ALJ wrote, that despite continuing to endorse symptoms of depression, anxiety, insomnia, difficulty concentrating, and forgetfulness, among others, Plaintiff was goal oriented, attentive, cooperative, and had a logical thought process. *E.g.*, (R. 510, 512, 520, 521, 530, 531, 532, 534). By June 19, 2020, Plaintiff reported an improvement in her mood and Dr. Snow assessed a euthymic mood. (R. 521). By July 2020, Plaintiff had reported improvement in impulse control and coping with frustration, (R. 530), and an improved mood (R. 531, 532). The ALJ also

cited, in support of her finding that Dr. Ortiz's opinion was not consistent with other medical evidence in the record, to mental status examinations conducted in October 2019 that noted Plaintiff's memory, attention, and concentration were intact. (R. 31) (citing (R. 504, 506)). Thus, the ALJ could properly conclude that Dr. Ortiz's opinion—including that Plaintiff had a poor ability to maintain attention or concentration, a poor ability to interact with supervisors, and a poor ability to use judgment—was not consistent with the therapy session progress notes, which in large part noted Plaintiffs' attentiveness, cooperativeness, and ability to use a logical thought process, and also not consistent with Plaintiff's mental status examinations.[6]

Thus, the ALJ's assessment of the consistency of Dr. Ortiz's medical opinion was sufficient. *See Decaso v. Kijakazi*, No. 21-20949-CV, 2022 WL 4110690, at *4 (S.D. Fla. Aug. 26, 2022), *report and recommendation adopted*, No. 1:21-CV-20949, 2022 WL 4110354 (S.D. Fla. Sept. 8, 2022) ("Instead of recognizing that the ALJ discussed the required factors under § 405.1520c when reaching an unfavorable decision, Plaintiff is essentially asking the Court to replace the ALJ's analysis under the regulations with its own. This we cannot do.").

It is not grounds for reversal here that, in finding Dr. Ortiz's opinion not persuasive, the ALJ implicitly found that the opinion of the State agency consultant on reconsideration, Dr. Rowan, was more persuasive than the other opinion evidence in the record, including Dr. Ortiz's opinion. As noted above, the regulations no longer require the ALJ to give any specific or controlling weight to particular medical or administrative medical findings.[7] *See* 20 C.F.R.

---

[6] Further, for example, Dr. Ortiz opined that Plaintiff had a "fair" ability to maintain personal appearance, defined as "ability to function in this area is limited but satisfactory." (R. 547). Yet, the therapy progress notes from before the start of the COVID-19 pandemic, and Dr. Ortiz's own progress notes, indicate that Plaintiff was appropriately groomed and/or casually dressed. *E.g.*, (R. 489, 496, 498, 510, 511, 512, 513, 514).

[7] Plaintiff complains of the ALJ's conclusion that "State agency psychological consultants have an understanding of Social Security disability program policies and their evidentiary requirements." However, this analysis speaks to the "Other Factors" that are considered when assessing medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c(c)(5) ("We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has

404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Indeed, even under the pre-2017 regulations, courts did not second guess an ALJ's assessment of the weight a treating physician's opinion deserves "so long as [the ALJ] articulate[d] a specific justification for it." *Greter Alvarez Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *6 (11th Cir. May 11, 2022) (quoting *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015)) (first alteration in original).

Accordingly, the ALJ's RFC finding is based on substantial evidence and reversal is not warranted on this ground.[8] *See id.* at *7 (finding that Plaintiff's argument—that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed to properly evaluate medical opinion evidence—failed upon the court's finding that the ALJ properly weighed the medical opinion evidence).

---

familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). I further note that Plaintiff argues that the ALJ failed to properly assess the supportability and consistency factors when evaluating Dr. Rowan's opinion. Thus, in arguing that the ALJ failed to properly assess Dr. Ortiz's opinion, Plaintiff contends that "there's nothing in the ALJ's decision that explains why the opinions of Dr. Ortiz, the long-time treating psychiatrist, should be found any less persuasive than the opinions of two psychological consultants who only each once reviewed the record in the very early stages of the case." (ECF No. 14 at 16). Defendant contends that the ALJ's failure to assess the supportability and consistency factors is harmless error because the ALJ assessed limitations in Plaintiff's RFC that were consistent with and more restrictive than Dr. Rowan's findings. However, Plaintiff advances no argument of prejudice resulting from the ALJ's failure to articulate consistency or supportability of Dr. Rowan's opinions, beyond the argument that Dr. Ortiz's opinion was afforded less weight than Dr. Rowan's opinion. Rather, it is apparent that the ALJ afforded Dr. Rowan's opinion weight in making her RFC finding, which mirrored the limitations noted in Dr. Rowan's findings. The mere technical failure to articulate the consistency or supportability here does not warrant remand. And in any event, the ALJ did, in step two, indicate that she assessed the consistency of Dr. Rowan's opinion with respect to whether Plaintiff suffers from severe impairments. The ALJ viewed Dr. opinion on this point as "consistent with the other evidence of record as a whole including the medical evidence demonstrating the claimant's persistent symptoms remained generally stable with appropriate conservative treatment and the absence of more significant positive objective clinical or diagnostic findings pertaining to a physical impairment." (R. 26–27).

[8] Plaintiff also asserts that "even if the ALJ were warranted in discounting Dr. Ortiz's opinion, at least to some extent, we'd reasonably still expect to see corresponding mental limitations in the ALJ's RFC finding." (ECF No. 14 at 17). The ALJ's RFC finding did include mental limitations, including findings that Plaintiff can: tolerate only infrequent changes gradually introduced in a routine work setting; understand and carry out simple and detailed, but uninvolved instructions, but not at a production rate or pace; occasionally interact with supervisors and coworkers but never the public; and maintain concentration for at least two hours and remain on task 90 percent of the day. (R. 28).

## VI. RECOMMENDATIONS

Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff Greter Alvarez Martin's Motion for Summary Judgment with Supporting Memorandum of Law (ECF No. 14), be **DENIED**, and Defendant Kilolo Kijakazi's, Acting Commissioner of Social Security, Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 15) be **GRANTED**.

The undersigned further **RECOMMENDS** that the May 3, 2021 decision of the ALJ be **AFFIRMED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 8th day of February, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Joan A. Lenard
Counsel of Record